UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CAROLYN THOMAS,

    Plaintiff

v.

JACOB COLLECTION GROUP, LLC,

    Defendant

Case No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

(Unlawful Debt Collection Practices)

## COMPLAINT

CAROLYN THOMAS ("Plaintiff"), by and through her attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against JACOB COLLECTION GROUP, LLC ("Defendant"):

### INTRODUCTION

1. Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

### JURISDICTION AND VENUE

2. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and 28

U.S.C. § 1331 grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3.   Defendant conducts business in the Commonwealth of Pennsylvania and as such, personal jurisdiction is established.

4.   Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

5.   Plaintiff is a natural person residing in Mercersburg, Pennsylvania.

6.   Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

7.   Defendant is a debt collection company with offices located at 2623 West Oxford Loop, Oxford, Mississippi 38655.

8.   Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and sought to collect a debt from Plaintiff.

9.   Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

10.   At all relevant times, Defendant was attempting to collect a debt on LVNV Funding, LLC that was allegedly owed to Sears credit card.

11.   This debt arose out of transactions that were primarily for personal,

family, or household purposes.

12. Beginning in April 2012, and continuing through May 2012, Defendant contacted Plaintiff seeking and demanding payment for an alleged credit card debt.

13. On April 24, 2012, Defendant sent Plaintiff written correspondence demanding payment of $7,672.96. See Exhibit A, Defendant's April 24, 2012, letter to Plaintiff.

14. In the meantime, Defendant also began contacting Plaintiff on her home telephone machine seeking and demanding payment of the alleged debt.

15. Defendant contacted Plaintiff, on average, two (2) times a day in its attempts to collect a debt, and, at times, would call as frequently as three (3) times a day.

16. For example, on April 27, 2012, Defendant contacted Plaintiff three (3) times, calling her at 9:05 a.m., 11:27 a.m., and 1:06 p.m.

17. On that day, at 11:27 a.m., Plaintiff spoke with one of Defendant's collectors who identified himself as "J.T."

18. "J.T." claimed that Plaintiff could settle the alleged debt for $4,000.00 if she made payment that day.

19. This was confusing to Plaintiff, as only days earlier Defendant sent her correspondence claiming that they had been authorized to settle the alleged

3

PLAINTIFF'S COMPLAINT

debt for $5,371.07, which was greater than the amount "J.T." demanded to settle the account.

20. Plaintiff explained to "J.T." that she was unable to make payments on the alleged debt because she had medical/health issues which caused her to have to stop working.

21. "J.T." told Plaintiff that he would give her a day to think about settling the debt and apparently wished to end the call.

22. However, "J.T." did not actually hang up the telephone, and as Plaintiff listened, she overheard the person identified as "J.T.'s" speak to someone who apparently was her supervisor, who said, "same old story, back hurts".

23. During the above call, Plaintiff continued to listen and overheard the supervisor instruct "J.T." to run a thorough background check on Plaintiff. It was after this that Plaintiff hung up.

24. Several days later, on May 1, 2012, at 11:27 a.m., the person identified as "J.T." called Plaintiff again asking if she could now make payments of $75.00 - $100.00/month, to which "J.T." was told that Plaintiff could not, and reiterated that she was going through a hardship financially due to being out of work for medical reasons.

25. Plaintiff told JT that her situation may be different in three to six months.

Case 1:12-cv-01063-SHR   Document 1   Filed 06/06/12   Page 5 of 9

Case 3:02-at-06000   Document 577   Filed 06/06/12   Page 5 of 9

26. In reply, "J.T." stated that it "would cost [her] thousands more and possibly go further," if she did not pay immediately.

27. "J.T." threatened Plaintiff that Defendant would take legal action against her.

28. Plaintiff understood "JT" to mean that legal action would result in a judgment and lien against her property.

29. Not wanting to be contacted any further, Plaintiff instructed Defendant to stop calling her.

30. Then, on May 2, 2012, at 3:24 p.m., Plaintiff received a telephone message from someone claiming to be "J.T.'s boss" who said, "after reviewing J.T.'s notes on a conversation yesterday," he believed he "can help" her, and told Plaintiff to call him back.

31. Several days later, on May 8, 2012, Defendant contacted Plaintiff twice, calling her at 2:48 p.m. and 3:48 p.m at which time Defendant's collector identified herself as "Bonnie Hill". Plaintiff demanded that calls stop, to which the collector stated that continued calls were necessary until the alleged debt was paid.

32. In the above conversation, "Ms. Hill" suggested that Plaintiff borrow money from her retirement plan or from her friends to pay the alleged debt.

33. "Ms. Hill" threatened Plaintiff that if she did not pay, Defendant would continue to make investigations into her employment and seek to garnish

PLAINTIFF'S COMPLAINT

her wages.

34. Plaintiff again told "Ms. Hill" to stop the calls, to which "Ms. Hill" again responded, that Plaintiff must pay to stop the calls.

35. Defendant's conduct in the above conversation was misleading and deceptive and also threatened action which Defendant could not or did not intend to take.

36. At no time did Defendant intend, or take any steps, including referring Plaintiff's account to an attorney licensed to practice law in Pennsylvania, to pursue legal action against Plaintiff.

37. Further, Defendant did not intend to garnish Plaintiff's wages, and legally could not do so, as, in Pennsylvania, an individual's wages cannot be garnished to satisfy a debt.

## DEFENDANT VIOLATED THE
## FAIR DEBT COLLECTION PRACTICES ACT

38. In its actions to collect a debt, Defendant violated the FDCPA in one or more of the following ways:

### COUNT I

a. A debt collector violates §1692d of the FDCPA by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

b. A debt collector violates §1692d(5) of the FDCPA by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

c. Here, Defendant violated §§1692d and 1692d(5) of the FDCPA by calling Plaintiff multiple times a day and multiple times a week, with the intent to annoy, abuse and harass Plaintiff.

## COUNT II

a. A debt collector violates §1692e of the FDCPA by using false, deceptive or misleading representations or means in connection with the collection of any debt.

b. A debt collector violates §1692e(4) of the FDCPA by representing or implicating that nonpayment of any debt will result I the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

c. A debt collector violates §1692e(5) of the FDCPA by threatening to take any action that cannot legally be taken or that is not intended to be taken.

    d. Here, Defendant violated §§1692e and 1692e(4) when it threatened to garnish Plaintiff's wages for a nonpayment of a debt, when it did not intend to do so and legally could not do so.

    e. Also, Defendant violated §§1692e and 1692e(5) when it threatened legal action against Plaintiff, when it did not intend to do so.

## COUNT III

    f. Defendant violated the FDCPA §1692f by using unfair and unconscionable means in connection with the collection of a debt.

    g. Here, Defendant violated §1692f of the FDCPA engaging in other unfair and unconscionable debt collection practices, including telling Plaintiff it would cost her thousands more in dollars if she did not pay the alleged debt, that they were conducting a background check on her, that they would conduct an employment investigation, to borrow money from her friends and/or her 401-K in order to pay the alleged debt, and that the only way the calls would stop is if she made payment on the alleged debt.

WHEREFORE, Plaintiff, CAROLYN THOMAS, respectfully prays for a judgment as follows:

    a. All actual damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

b. Statutory damages of $1,000.00 for the violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1693k(a)(3); and

d. Any other relief deemed appropriate by this Honorable Court.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, CAROLYN THOMAS, demands a jury trial in this case.

RESPECTFULLY SUBMITTED,

DATED: June 6, 2012

_____
Craig Thor Kimmel
Attorney ID #57100
Kimmel & Silverman, P.C.
30 E. Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888
Fax: (877) 788-2864
Email: kimmel@creditlaw.com